(45 South. 280.)

No. 16,789.

DUGUE v. LEVY.

(Dec. 16, 1907. Rehearing Denied Jan. 20, 1908.)

1. CONTRACTS — ACTION FOR BREACH — EVIDENCE.

Where, before completion of a building, the owner puts an end to the building contract, and destroys the building, and the contractor sues for his expenses and probable profits, but, owing to the loss of his books, is able to furnish an itemized statement and corroborative evidence only of the materials that went into the building, and can only testify in globo as to the other expenses, the building itself will be corroborative evidence of these other expenses, if the amount at which they are fixed is not beyond what was the probable cost of the work.

2. SAME—PRESCRIPTION.

In such a suit, the builder does not have to pay for the materials before he can sue for their cost. Nor has the defendant any standing for pleading prescription against the claims of the furnishers of materials.

3. ASSIGNMENT—RIGHT OF ACTION.

A plaintiff may assign his rights, and the suit be thereafter prosecuted in his name or that of his assignee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments, §§ 35–41, 205–209.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Joseph Dugue against Samuel Levy. Judgment for plaintiff, and defendant appeals. Affirmed.

James Barkley Rosser, Jr., and Parkerson, Bruenn & Breazeale, for appellant. E. A. O'Sullivan, for appellee.

PROVOSTY, J. This suit is on a contract for the construction of a building. Payments were to be made as the work progressed. When the first installment was due, plaintiff demanded payment as per contract, and, same being refused, brought this suit. Pending the litigation defendant demolished the building so far as constructed, and carted away the materials. Plaintiff thereupon brought the present suit for the contract price of $7,500, for damages to reputation, and for other actual damages. He recovered judgment; but on appeal to this court the judgment, although affirmed in so far as establishing the liability of defendant, was set aside and the case remanded for further evidence. Dugue v. Levy, 114 La. 21, 37 South. 995. The lower court has again rendered judgment in favor of plaintiff. Plaintiff testified that he had expended on the building in labor and materials at the time he ceased work thereon $4,836.24, and that he expended thereafter during the pendency of the long litigation and before the building was torn down by defendant $324.55 for keeping a watchman and red lights on the work at night. He also testifies that his residence was destroyed by fire, and that he lost in the fire the memorandum and other books in which he had kept an account of said expenses. At the time that defendant put an end to the contract and demolished plaintiff's work, plaintiff recorded a statement of defendant's indebtedness to him for labor and materials putting the amount due at $4,800. The lower court gave him judgment for $4,498.59.

On the former appeal this court did not find that plaintiff's demand was not supported by some evidence. Plaintiff had sworn to his claim, and the building itself was evidence that plaintiff's expenses had been considerable, and there was other corroborative

evidence; but the court found that the evidence was "scant," and remanded the case for further evidence. Plaintiff has now produced the furnisher of the iron work, who testified his bill amounted to $625; the furnisher of the lumber, who testified his bill amounted to $457.48; the furnisher of brick, sand, lime, and cement, who testified his bill amounted to $448.30; the furnisher of the stairs, who testified his bill was $180, reduced, however, to $57, owing to the stairs not having been used; the plumber, who testified his bill amounted to $40. On the previous trial the furnisher of factory work testified to $105. In regard to that part of the work which had to be reconstructed owing to the fault of the architect the workmen who did the work proved that the labor part of it cost as follows: Disclosing lintels, $61.60; repairing holes, $16; girders, $20; moving foundation, $45. Other minor items are proved otherwise than by testimony of plaintiff.

Red lights and a watchman were maintained on the work pending the litigation and before the building was torn down. The litigation began in September, 1900, and the building was torn down in September, 1902. Plaintiff testified that he maintained a watchman on the work 158 nights at $1.50, and maintained an average of three red lights on the work 159 nights at 55 cents per night. There can be no denial that a watchman and red lights were kept on the work. The only question is as to the number of nights and to the costs. For our part we see no reason for doubting the correctness of the bill presented by plaintiff, even after allowing full scope to the testimony of the son of defendant.

There is an item of $140 for cost of reconstruction of foundations, which the trial judge rejected as excessive. But this work of reconstruction certainly cost something. Leaving the item out, however, as well as the item for red lights and watchman, and

we have $1,875.38 of expense that is proved by other witnesses than the plaintiff. If we deduct this from $4,498.59 allowed by the learned judge a quo, there is left $2,623.21, to be proved exclusively by the testimony of plaintiff. From that balance may be safely deducted $750 as representing the legitimate profit plaintiff was entitled to on his work. In saying that 10 per cent. on the contract can safely be allowed for the profits plaintiff would probably have made if he had been allowed to complete the building, we base ourselves on the testimony of plaintiff, to the effect that building contracts are predicated on a larger margin of profit than this, and that he is satisfied that, even after making every allowance for the unreasonableness of the supervising architect, he would have made a profit of at least $900. This testimony was given on the first trial, and not a word of contradiction of it appears in the record, although several years intervened between the two trials. We are bound to assume that, if the margin of profits upon which building contracts are predicated were less than as thus testified by plaintiff, defendant would, in this hotly contested case, have offered evidence to that effect. Deducting, then, this further item of $750 from the $4,498.59, and there is left $1,873.21. Of this balance the red lights and watchman item of $324.55 has been specifically testified to by plaintiff, and may be considered as more or less proved by said testimony and the corroborating circumstances, leaving $1,548.66, to which plaintiff has testified in globo, being unable, as he says, to furnish details, owing to the loss of his book. An amount not too large, we think, to allow for the labor and other expenses, exclusive of materials, for bringing this large two-story brick and iron building as near completion as plaintiff had it when work on it was discontinued.

The plaintiff made an assignment of his rights in this suit to a trustee for the bene-

fit of his creditors, and this trustee intervened in the suit, asking to be permitted to prosecute the suit for the benefit of the creditors. The court dismissed the opposition for some reason not stated.

It is well settled in our jurisprudence that a plaintiff may assign his suit to a creditor, and that the creditor may then prosecute the suit either in his own name or in that of plaintiff. Towne v. Couch, 7 La. Ann. 93; Ruddock Cypress Co. v. Peyret, 111 La. 1019, 36 South. 105. The intervention therefore should not have been dismissed.

Defendant's learned counsel argue that plaintiff has no longer any interest, because he has assigned his interest, and that the creditors' of plaintiff have no interest, because their claims against plaintiff are prescribed; and that, therefore, no one has any interest in prosecuting the suit, and it should be dismissed. Defendant's learned counsel also argue that the plaintiff cannot sue for the costs of the materials because he has not paid for them. To bolster up these contentions the learned counsel for defendant pleaded prescription against the claims of plaintiff's creditors.

But all this can hardly have been meant seriously. Manifestly, if plaintiff's interest in the suit was not divested by the assignment, it remained in plaintiff, and if, on the other hand, it was divested, it passed to the creditors, so that one or the other, either plaintiff or the assignee, has an interest in prosecuting the suit. And manifestly, also, defendant cannot claim prescription against the debts of his creditors. If his own debt is not prescribed, the only interest he can have is not to be required to litigate it with a person not qualified to stand in judgment with reference to it, and he can be in no danger of this when the person to whom the debt was contracted is himself the plaintiff in the suit.

Judgment affirmed.